# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 23, 2012 Session

## FORK UNION MEDICAL INVESTORS LIMITED PARTNERSHIP; GOOCHLAND MEDICAL INVESTORS LIMITED PARTNERSHIP; LIFE CARE CENTERS OF AMERICA, INC. v. HR ACQUISITION OF VIRGINIA LIMITED PARTNERSHIP; HRT HOLDINGS, INC.

### Appeal from the Circuit Court for Davidson County
### No. 09-C-495     Hamilton Gayden, Judge

---

### No. M2011-01743-COA-R3-CV - Filed November 28, 2012

---

This is a dispute over a claim for rent reimbursements in a lease agreement. The trial court granted summary judgment to the defendant, holding that the undisputed facts showed that a limitation of remedy provision in the lease relieved the defendant from any liability. We affirm the judgment of the court below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

BEN H. CANTRELL, SR. J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR.. and RICHARD H. DINKINS, JJ., joined.

Roger W. Dickson, Chattanooga, Tennessee and Lynda Hill, Nashville, Tennessee, for the appellants, Fork Union Medical Investors Limited Partnership, Goochland Medical Investors Limited Partnership and Life Care Centers of America, Inc.

Robert Boston and Michael T. Harmon, Nashville, Tennessee, for the appellees, HR Acquisition of Virginia Limited Partnership and HRT Holdings, Inc.

**OPINION**

**I.  FACTS AND PROCEDURAL HISTORY**

In 1989, Quality Links L.P. leased two nursing home properties in Virginia to Care More, Inc.  The leases contained similar rent provisions.  Because the nursing homes had not been constructed and the final rent could not be set until the total cost had been approved by Medicaid for reimbursement purposes, the leases called for an interim rent to be paid until the Medicaid determination.  Paragraph 2.C. of the leases provided that if the interim rent paid exceeded the rent due based on the Medicaid approved costs, the tenants could recover the difference from the landlord.

The leases also had a provision that limited the source from which the recovery could be collected.  That provision is found in paragraph 22 of the leases, called Status of Landlord:

> A.  Anything in this Lease to the contrary notwithstanding, Tenant agrees that Tenant shall look solely to the estate and interest of Landlord in the Demised Premises for the collection of any judgment (or other judicial process) requiring the payment of money by Landlord in the event of a default or breach by Landlord with respect to any of the terms, conditions and covenants of this Lease to be performed by Landlord, subject, however, to the prior rights of any mortgagee to all or any part of the Demised Premises.  Tenant acknowledges and agrees that no other assets of Landlord, its agents and designees, its partners or its affiliates shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claim.

> B.  Landlord shall have the absolute and unfettered right to sell or transfer all or part of its interest in the Demised Premises and Tenant acknowledges and agrees that upon such sale or transfer the term "Landlord" shall mean only the new owner or transferee and the transferor shall be automatically relieved of and discharged of all further liability with respect to the performance of any of the terms, conditions and covenants of this Lease, and Tenant agrees to thereafter look only to such purchaser or transferee of Landlord's interest in the Demised Premises for the performance fo Landlord's obligations hereunder.

On February 8, 1991, Care More, Inc. assigned its leasehold interests of both properties to Second Street, Inc. On December 1, 1993 the plaintiff, Goochland Medical Investors Limited Partnership, assumed the lease on one of the properties and the plaintiff, Fork Union Medical Investors Limited Partnership, assumed the other. Both plaintiffs are affiliates of the other plaintiff, Life Care Centers of America, Inc.

In 1998 H R Acquisition of Virginia Limited Partnership, an affiliate of Healthcare Realty Trust, assumed ownership of both properties, thus becoming the "landlord" under the lease agreements. Both leases expired by their terms early in 2001.

Nevertheless, the parties continued to operate under the lease terms until November 21, 2003. On that date Goochland and Fork Union executed two lease termination agreements wherein they agreed to terminate their respective leases on December 1, 2003, subject to the resolution of certain "unresolved claims." The unresolved claims were outlined in a side letter agreement attached to the termination documents. The side letter recited various claims by both parties related to facilities in other parts of the country, but it specifically identified "portions of the base rent asserted by Life Care to be due to be refunded by HRT and related issues asserted by HRT in connection with the leases for the Meadows of Goochland and Village of Fork Union facilities;..."

The parties ultimately resolved all of the issues recited in the side letter except for the rent dispute involving the two Virginia properties.

Medicaid did not make a final determination of the total cost of the two facilities until 2002. Consequently, the plaintiffs had been paying the interim rent since 1989. The difference between the interim rent and the rent based on the Medicaid approved cost of the facilities is the subject of this dispute.

On October 26, 2006, the plaintiffs filed suit in the Circuit Court of Bradley County Tennessee. The defendants were HR Acquisitions, Healthcare Realty Trust Incorporated and HRT Holdings, Inc. On March 26, 2007 HR Acquisitions sold all of its interests in the two Virginia properties to Ruxton Village Holdings Company, LLC. The terms of that sale are not set out in any of the briefs.

On January 19, 2011, the defendants filed a motion for summary judgment or in the alternative a motion for partial summary judgment arguing that paragraph 22 of the

original lease agreements barred the plaintiff's claims. After subsequent proceedings the trial court granted the motion for summary judgment on July 20, 2011. The order stated:

> 1)    Defendant's Motion for Summary Judgment is GRANTED. The Court finds that Paragraph 22 of the respective Lease Agreements at issue is enforceable and serves as the sole remedy for any purported breach of the Lease Agreements by Defendants. Paragraph 22 limits the recovery of damages for breach of the Lease Agreement to a defendant's estate and interest in the Demised Premises at issue in the respective Lease Agreements. It is established on the record that neither Defendant has any ownership interest in the Demised Premises at issue in the respective Lease Agreements.

> 2)    Accordingly, Plaintiffs' sole claim against Defendants for Breach of Contract in the First Amended Complaint is DISMISSED with prejudice.

## II. STANDARD OF REVIEW

Under Rule 56.04 Tenn. R. Civ. Pro., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In making this determination a court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Stovall v. Clark,* 113 S.W.3d 715, 721 (Tenn.2003).

Once rendered in the trial court, a summary judgment is reviewed de novo in this Court as a matter of law. As the Supreme Court has often repeated: summary judgments do not enjoy a presumption of correctness. *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn.1997); *Bellsouth Adver. & Publ'g v. Johnson*, 100 S.W.3d 202, 205 (Tenn.2003); *Hunter v. Brown* 955 S.W.2d 49, 50 - 51 (Tenn.1997).

# III. ANALYSIS

## A.

The appellant asserts that paragraph 22 of the lease agreement is invalid for a multitude of reasons. First, it asserts that in Virginia, such exculpatory clauses are disfavored.

The first question that this issue raises is whether paragraph 22 is technically an exculpatory clause or simply a contract term that limits the source from which plaintiff could obtain and satisfy its judgment. Nevertheless, since the parties have treated the provision as an exculpatory clause, we will address that issue.

While Virginia may strictly construe such clauses, they are not invalid in Virginia. *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d (E.D.Va. 2007). A review of the Virginia cases reveals that such provisions are "regularly enforced," *Trumball Investments Ltd. I v. Wachovia Bank, N.A.*, 2005 WL 148880 (E.D.Va. April 15, 2005), and they are recognized as an essential part of the freedom of parties to limit their risks in commercial transactions. *Kocinec*, at 588.

Plaintiffs refer to a three-part test to determine whether an exculpatory clause should be enforced: 1) It must not violate public policy; 2) it must be plain and easily understood; and 3) it must clearly and unequivocally release the party from precisely the type of liability alleged by the plaintiff. *Kocinec*, at 560.

It is hard to imagine how the parties could have made the limitations on recovery any plainer. Paragraph 22 "clearly and unequivocally" relieves the defendant from any liability if they are no longer the landlord of the properties covered by the leases.

The plaintiffs argue that paragraph 22 is against public policy because it is unconscionable.

Under Virginia law an unconscionable bargain is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Smyth Bro.s-McCleary-McCullen Co. v. Beresford*, 128 Va. 137 (1920). Plaintiff's first argument on this issue is that paragraph 22 is unconscionable because its

application would leave plaintiffs with no remedy. As we have stated, clauses producing that result are regularly enforced under Virginia law. We cannot say, therefore, that paragraph 22 is unconscionable.

Next, the plaintiffs contend that paragraph 22 leads to an unconscionable result because it allows the defendants to avoid the consequences of their intentional and wilful misconduct. They cite a District Court case, *All Business Solutions v. Nationsline, Inc.*, 629 F.Supp.2d 553 (W.D.Va 2009) for the proposition that in Virginia a contractual provision may not limit liability for claims of intentional or wilful misconduct.

There are two flaws in the plaintiff's argument, however. The first is the plaintiff's failure to allege in their complaint that the defendants acted wilfully or intentionally. They raised the point for the first time in their response to the motion for summary judgment. Their primary authority in the case, *Kocinic,* addresses that point and holds that the summary judgment stage is too late in the process to raise the issue of intentional misconduct.

The second flaw in the argument is the assertion that the refusal to pay a disputed claim or to take an action allowed by the plain terms of the contract is somehow mis-conduct. Plaintiffs do not cite any authority for that position. Defendants cite *Global Crossing Telecommunications, Inc. v. CCT Communications, Inc.*, 2011 WL 3023501 (Bankr.S.D.NY 2001) for the proposition that to show wilful or intentional misconduct for breach of contract a plaintiff must show wrongful conduct in which a defendant willfully intends to inflict harm on a plaintiff through the breach. We are not persuaded that intent to inflict harm is a necessary component of willful misconduct, but there must be some showing that the defendant knew that the action he/she was about to take was an unwarranted breach of the contract. There is no evidence of that in the record.

The appellants also argue that paragraph 22 does not even apply to this case because the lease agreements had terminated. The termination, however, retained the plaintiff's claims for refund of the rent overpaid on the two Virginia properties. It is the opinion of the Court that the right to recover the rent overpayment was preserved subject to the same conditions and defenses that existed in the original lease agreements. There is no indication in the side letter agreement or elsewhere that the parties intended to fundamentally change the lease provisions by preserving the claim for overpaid rent but deleting the limitations on that claim contained in paragraph 22. All the evidence points

to the opposite conclusion.

The appellants also argue that they have no remedy now since the defendant has sold its interest in the nursing homes without notifying the new owner that the properties are subject to appellant's claims. We are not entirely sure that the record shows that the new owners are bona fide purchasers without notice of the appellants' rights to subject the properties to their claims. But assuming that is true, the appellants had from November of 2003 to March of 2007 - while the defendant still owned both properties - to assert a lien lis pendens on the nursing home properties. That action would have put any purchasers on notice that the properties were subject to a claim for the overpaid rent.

**B.**

Finally, the appellants assert that the trial judge's summary judgment order does not comply with Tenn.R.Civ.Pro 56.04. That rule requires a trial court to "state the legal grounds upon which the court denies or grants" a motion for summary judgment.

We have quoted the lower court's order in a prior part of this opinion. The grounds for which the court granted summary judgment are clear; therefore we think the order satisfies Rule 56.04.

In addition, the appellant's argument on this issue is actually a re-argument that there are factual disputes about the defendant's "intentional conduct." We have dealt with that contention in an earlier part of this opinion. We find it to be without merit here.

**V. CONCLUSION**

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for any further necessary proceedings. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, SENIOR JUDGE